## STATE v. JOHN RENSWICK.[1]

December 13, 1901.

Nos. 12,784—(17).

**Subornation of Perjury.**

If, in the prosecution of a party for subornation of perjury, it is sought to establish the fact that perjury was committed by the person suborned, his testimony must be corroborated as to such fact. But the alleged fact that he was induced to commit the crime by the accused may be established by his uncorroborated testimony if it satisfies the jury beyond a reasonable doubt.

**Conviction Sustained by Evidence.**

Evidence considered, and *held* that it.sustains the conviction of the defendant of the crime of subornation of perjury, and that the testimony of the party suborned is corroborated within the rule stated.

**Admission of Evidence—Charge to Jury.**

The trial court did not err in its rulings as to the admission of evidence, nor in its instructions to the jury.

Defendant was convicted in the district court for Wright county of the crime of subornation of perjury. From the judgment of conviction, and from an order, Giddings, J., denying a motion for a new trial, defendant appealed. Affirmed.

*W. H. Cutting,* for appellant.

*W. B. Douglas,* Attorney General, *C. W. Somerby,* Assistant Attorney General, *E. S. Oakley,* County Attorney, and *C. A. Pidgeon,* for the State.

START, C. J.

The defendant was convicted of the crime of subornation of perjury in the district court of the county of Wright, and sentenced to imprisonment in the state's prison for the term of two and one-half years. He appealed from the judgment.

The indictment charged that the defendant wilfully and feloniously induced and procured Mrs. Frances Janikula, then an unmarried woman, to go before a justice of the peace in proceedings in

[1] Reported in 88 N. W. 22.

bastardy, and falsely to swear to a complaint in writing that Thomas Janikula was the father of her unborn child.

The completed crime of subornation of perjury consists of two essential elements,—the commission of perjury by the person suborned, and the wilfully procuring or inducing him to so do by the suborner. G. S. 1894, § 6379. As to the first element of the crime, the suborned and the suborner are principals by virtue of the statute (section 6310), and necessarily each is the accomplice of the other; hence this element of the crime cannot be established by the uncorroborated evidence of the suborned (section 5767). But as to the second element of the crime, the suborned is neither a principal nor an accomplice, for legally he cannot be guilty of persuading himself to commit perjury. An indictment of a party for inducing himself to commit a crime would be a legal absurdity. State v. Pearce, 56 Minn. 226, 231, 57 N. W. 652, 1065; State v. Sargent, 71 Minn. 28, 31, 73 N. W. 626; State v. Durnam, 73 Minn. 150, 75 N. W. 1127. The conclusion logically follows that if, in the prosecution of a party for subornation of perjury, it is sought to establish the fact that perjury was committed by the testimony of the person committing it, his testimony must be corroborated as to such fact, because as to the perjury he is an accomplice. But the alleged fact that he was induced to commit the crime by the accused may be established by his uncorroborated testimony if it satisfies the jury beyond a reasonable doubt.

The instructions of the trial court to the jury as to the necessity of corroboration of the testimony in this case of Mrs. Janikula, the person alleged to have been suborned, was more favorable to the defendant than the law required; for they were instructed, in effect, that the defendant could not be convicted unless her testimony was corroborated both as to the commission of the alleged perjury and as to the alleged fact that she was induced so to do by the defendant; hence he cannot complain of the charge in this respect.

The most serious question, however, raised by the defendant's assignment of errors is that the evidence is not sufficient to support the verdict. His claim is that there was no sufficient corroboration of the testimony of Mrs. Janikula, but, on the contrary,

that her own testimony and the alleged corroborating evidence were unworthy of credit. The witness named testified to the effect that the complaint charging Thomas Janikula with being the father of her unborn child, which she swore to, was false, but that she was induced to so falsely swear by the defendant. She admitted on her cross-examination that two days after making the complaint she stated to a priest in the presence of Thomas Janikula and his wife that he was the father of her child, and that she made the same statement on another occasion to another person. She also admitted that on the hearing in justice court upon her complaint against Thomas Janikula she swore that he was not the father of her child, but that the defendant was. Further testimony was given by her on the trial of the defendant to the effect that she told the defendant that she was pregnant, and that he was the father of the child, and that thereupon he induced her to charge its paternity to Thomas Janikula, her brother-in-law; that, if she did, she could get $1,000 from him; and that he would assist her in securing that result.

As to the alleged fact that she swore falsely when she made the complaint against her brother-in-law she is corroborated by his testimony, which was to the effect that he never at any time had sexual relations with her. Her testimony as to the defendant's inducing her to commit perjury is corroborated by the justice of the peace before whom he was charged with suborning her. The testimony of the justice was that the defendant said to him, in effect, that he had got himself in a bad fix, and if he got out of it he would be more careful in working up cases for people; that "he was going to get a share in this." There was also evidence tending to show that the defendant was present with Mrs. Janikula when her lawyer wrote letters for her to her brother-in-law, charging him with being the father of her unborn child, and suggesting that he call and settle the matter, as "it would be a very bad affair if the matter should get into the courts." It was conclusively shown that Mrs. Janikula was pregnant at the time she made the charge against her brother-in-law.

In view of the fact that the principal witness against the defendant was a self-confessed perjurer, we had, when the case was

submitted, doubts as to whether the defendant ought not to have been granted a new trial. But a further and careful consideration of the record satisfies us that the verdict is sustained by the evidence, and we so hold. The complaining witness was corroborated on all the essential elements of the crime, and her credibility, as well as that of the other witnesses, was a matter for the jury. They and the trial judge saw and observed the witnesses, and were in a better position to determine whether they told the truth or not than we are. The trial judge stated in his memorandum in denying the motion for a new trial that from the manner and appearance of the witnesses he was satisfied that the verdict was a just one.

The defendant asked Mrs. Janikula, on her cross-examination, this question: "Have you been arrested for testifying falsely in justice court?" The trial court sustained an objection by the state to this question on the ground that it was immaterial, and the ruling is here assigned as error. The ruling was correct. The mere fact that a party has been arrested does not affect his credibility. It is the fact that he has been convicted of a crime which may be given in evidence for the purpose of affecting his credibility. G. S. 1894, § 6841. There was no offer to follow the question with proof that the witness had been convicted. The witness in response to a question by counsel for the defendant testified that she told the priest that the defendant had persuaded her to say that Thomas Janikula was the father of her child, and on her direct examination she was asked what reply the priest made. Over the objection and exception of the defendant she answered: "The priest told me that it was bad that I should do that, and that John Renswick should have me say that Thomas Janikula was the father of my child." This is urged as error. It was technically so, for what the priest said was not material. But it was not prejudicial; hence not reversible error, for what he said was in response to a statement made by the witness to him, a matter as to which the defendant cross-examined her; and the reply of the priest was simply to the effect that, upon her statement, her conduct and that of the defendant were reprehensible,—a conclusion, if her

statement was true, so manifestly correct that the opinion expressed by the priest could not be prejudicial to defendant.

Other rulings of the trial court as to the admission of evidence are assigned as error. We have considered them, and find that they were not erroneous. The trial court charged the jury, in substance, that the state claims that there are other facts and circumstances in the case; that the letters to which reference has been made and the testimony of the justice of the peace are facts and circumstances which corroborate the testimony of the complaining witness; but that it was for the jury to say from the evidence whether or not such corroboration exists. This is urged as error, because there was no evidence in the case that the defendant knew anything about the letters. There was evidence tending to show that the defendant was present, and acted as interpreter, when the letters were written; hence the instruction was correct. Several other exceptions to the charge of the court to the jury and to its refusal to give certain requested instructions are urged by the defendant. We have considered them all, and find each to be without merit. All of the special requests which state the law accurately were fully and fairly covered by the general instructions, and the exceptions to the charge are based either upon a misapprehension of the charge or a strained construction of the language used by the trial judge.

Our conclusion is that the record discloses no reversible error, and that the judgment must be affirmed. So ordered.